# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JONATHAN T. THOMAS,               Case No. 1:16-cv-793
     Plaintiff,

                                 Black, J.
     vs.                         Litkovitz, M.J.

RON ERDOS, et al.,             **ORDER AND REPORT**
     Defendants.            **AND RECOMMENDATION**

Plaintiff, a prisoner at the Southern Ohio Correctional Facility (SOCF), initiated this action by filing a motion for leave to proceed *in forma pauperis* in connection with a pro se civil rights complaint against SOCF defendants Hale, Fri, Miller, Hutchinson, Dawson, Combs, Oppy, Mahlman, Noland, Erdos, and Cool. (Doc. 1). The undersigned subsequently issued a Deficiency Order requiring plaintiff to either pay the full filing fee or submit a completed, signed *in forma pauperis* application. (Doc. 3). Plaintiff has complied with the Court's Order and, by separate Order, been granted leave to proceed *in forma pauperis*.

Plaintiff has also filed a motion for leave to file a supplemental complaint (Doc. 7), which is hereby **GRANTED.** In the supplemental complaint, plaintiff also names as defendants officer Holbrook and the Chief Inspector of Corrections.

This matter is before the Court for a *sua sponte* review of the complaint, as amended, to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an

economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at

2

470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

In the complaint, plaintiff alleges that on May 4, 2016, defendant officer Hale deprived him of use of the law library. (Doc. 1-1, Complaint at PageID 11). When plaintiff asked him why he was being denied access, Hale allegedly said "chomos don't use computers in my law library" and threw plaintiff's ID in his face. (*Id.*). Plaintiff indicates that "chomo" is short for child molester and is used as a term of disrespect. Plaintiff alleges that he asked Hale for an informal complaint form, but Hale refused and told him to sit down. After leaving the library, plaintiff claims that Hale stopped him and told him to get on the wall. Plaintiff asked why, to which Hale responded "because you're a fucking 'chomo' that's why, and I'm sick of you

3

writing staff up." (*Id.*). Plaintiff claims Hale patted him down and threw his pen, comb, and legal papers on the ground. (*Id.* at PageID 12–13).

At this point, plaintiff claims that defendant officer Fri[1] ran to Hale's aide. Plaintiff alleges that Hale and Fri dared plaintiff to get off the wall, with Hale stating, "Try to hurt me how you hurt that kid!" (*Id.* at PageID 13). Plaintiff claims Fri also stated that "I'm sick of your chomo ass writing staff up," and told plaintiff he was going to take him off camera and beat him up. (*Id.* at PageID 14). Plaintiff further claims that Hale cuffed him so tight that his fingers started to tingle and a thin layer of skin tore on his arms, before escorting him to isolation. Plaintiff claims he was then stripped searched as punishment, noting that Hale said, "You like to see kids naked, now you get naked." (*Id.*).

On the way to isolation, plaintiff claims Hale threw plaintiff's legal papers to defendant Miller. (*Id.* at PageID 13). According to plaintiff, Miller read his legal documents out loud to Fri and other officers. (*Id.* at PageID 15). Plaintiff protested and Fri said that "he can read what he wants you fucking chomo, now I'm going to go to your cell and read all your legal work!" (*Id.* at PageID 14). Plaintiff claims he was again put up against the wall and that Miller came very close to him and said, "I wish this was 20 years ago, back then we used to kill chomos" and that if plaintiff filed a lawsuit he had better watch his back. (*Id.* at PageID 15). Plaintiff claims that upon returning to his cell, the cell was "completely destroyed" and that some important legal papers were missing.

---

[1] Plaintiff indicates that Fri was the first to learn about his criminal case and that plaintiff has a "bad history" with him. Plaintiff alleges that while at the hospital a year prior to the incident, Fri pulled out his gun, showed it to a nurse, and stated "you wouldn't care if I shot that child molester would you." (*Id.* at PageID 13). According to plaintiff, he wrote an informal complaint and a notification of grievance against Fri, but that neither was answered. (*Id.* at PageID 14). Plaintiff claims that Fri subsequently told him "your gonna wish you never wrote me up!" and he noticed staff started calling him "chomo Thomas" and treating him differently. (*Id.*).

4

One month after filing a grievance against Hale, plaintiff alleges that Hale told everyone within earshot of his cell that plaintiff was a snitch and a child molester. (*Id.* at PageID 13). According to plaintiff, shortly after Hale's comments inmates threatened to stab plaintiff and he was forced to pay for protection. Plaintiff also alleges that Fri told him, "You better hope you never come to [general population] again chomo" and "I hope you['re] enjoying your meals," which plaintiff understood to mean that Fri was tampering with his food. (*Id.* at PageID 14).

Plaintiff alleges that on April 2, 2016, defendant officer Hutchinson placed him in a small "strip cage." (*Id.* at PageID 15). Plaintiff indicates that despite his requests for Hutchinson to release him, plaintiff remained in the cell for thirty-five to forty minutes. As a result, plaintiff missed recreation and the nurse dispensing medication. According to plaintiff, Hutchinson ignored his initial requests to be released before finally telling plaintiff to "suck my fucking dick!" (*Id.* at PageID 16). Plaintiff indicates that he told Hutchinson that he would write him up for sexual harassment. Hutchinson allegedly became angry when another officer provided plaintiff an informal complaint form. Plaintiff claims Hutchinson told him, "I will have someone rape you how you raped that little girl you chomo bitch" loud enough for the entire unit to hear him. (*Id.*). Plaintiff further alleges that Hutchinson called defendant officer Dawson and told him to "tear his cell up." (*Id.*).

After the above incident, plaintiff claims that he returned to his unit and called the Prison Rape Elimination Act (PREA) hotline to report sexual harassment. (*Id.*). After calling the hotline plaintiff returned to his cell, where he alleges coffee was poured on his bed, clothes, and electronics. According to plaintiff, he asked defendant officer Dawson why he poured coffee on his television, to which Dawson responded "why the fuck you rape that little girl?" (*Id.*). Plaintiff informed Dawson that that was none of his business. Dawson responded, "What is my

5

business is you called PREA on my fellow officer, I will be in your cell daily chomo." (*Id.*).

Plaintiff claims he apologized to Dawson and tried to explain why he called the PREA hotline.

Dawson allegedly stated, "If you wouldn't have raped that little girl you would not have to deal

with that, so whose fault is it?" (*Id.*). Plaintiff also alleges that Dawson harassed him by writing

false tickets, refusing to let him use the phone, and telling the block porter not to do anything for

him because he is a child molester. (*Id.* at PageID 17).

Plaintiff next alleges that on April 8, 2016, defendant officer Combs noticed him in his

unit and said, "Wow, I'm surprised you didn't get stabbed with the other 'chomos' in K6,"

referring to two sex offenders who were stabbed two weeks prior. (*Id.*). Combs allegedly also

stated that he heard about plaintiff's PREA claim and plaintiff would not eat while in his unit.

According to plaintiff, Combs had his cell door shut and refused to provide him with food or a

shower for five days. Plaintiff further alleges that while in isolation, a porter came to his cell,

asked plaintiff if he was a chomo, and stated, "Combs told me you were and asked me if I would

beat your ass if he opened your cell for showers." (*Id.*). Plaintiff claims that he filed an informal

complaint and notification of grievance, but both were denied. (*Id.* at PageID 17–18).

Referencing the denied grievance, Combs allegedly later told plaintiff "[n]ice try snitch, Ms.

Mahlman is for us and cleared me!" (*Id.* at PageID 18).

Plaintiff claims that he brought the above incidents to the attention of defendant unit

manager Oppy, who failed to take any action. He claims he spoke with Oppy on three occasions

about the harassment from staff after filing his PREA case, but Oppy told him he was lying about

officers searching his cell, refused to provide him with a theft/loss form, failed to provide him

with the first names of the defendants in this action, and ignored informal complaints,

notification of grievances, and protective custody requests. (*Id.* at PageID 18).

6

Plaintiff similarly claims that defendant institutional inspector Mahlman has denied every notification of grievance he has filed with her by discrediting witness statements and refusing to review prison cameras. Plaintiff further alleges that he asked defendant Mahlman for protective custody based on the threats he received from inmates and officers. According to plaintiff, Mahlman denied the request and stated there is nothing she could do for him and plaintiff's "best bet is to just get out of SOCF because staff [at SOCF] hate sex offenders." (*Id.* at PageID 18–19). Plaintiff also claims he requested that Mahlman provide him with the first names of the defendants named in this action, but she refused.

With respect to defendant Noland, plaintiff claims that on April 13, 2016, he was called to Noland's office and asked to sign some papers for a transfer to LPHU, a new, limited privilege block. (*Id.* at PageID 19). Plaintiff indicates that the block has no access to electronics, phone, visits, or commissary. Noland stated he was moving plaintiff because plaintiff was a coward. Plaintiff refused to sign the paperwork, which he claims angered Noland. Noland stated to case manager Anderson, "Don't you just hate chomos that file paperwork," before telling plaintiff to get out of his office. (*Id.*). Plaintiff alleges that he told Noland he could not go back to his current assignment because of ongoing issues but Noland told him to "get out of my office before I put you in the hole coward!" (*Id.*).[2]

Plaintiff claims that he informed defendant warden Erdos of the ongoing harassment and his belief that SOCF staff did not properly investigate his request for protective custody. Erdos allegedly told plaintiff to "grow some balls" in response. (*Id.* at PageID 20). Plaintiff claims that he submitted an informal complaint that same day.

---

[2] It appears from the allegations in the complaint that plaintiff was subsequently transferred to the LPHU. (*See id.* at PageID 20).

7

Next, plaintiff alleges that he was denied access to religious services during the twenty seven days that he was in the LPHU. Plaintiff alleges that he sent a kite to defendant deputy warden of operations Cool, who stated that inmates in LPHU are not allowed to attend chapel service. He further claims that defendant Mahlman denied his disposition of grievance concerning the matter.

In the supplemental complaint, plaintiff includes allegations against two additional defendants. Plaintiff alleges that he has sent five appeals to defendant Chief Inspector of Corrections since April of 2016 and has not received a single reply. (Doc. 7, at PageID 68). Plaintiff also alleges that on August 18, 2016, defendant officer Holbrook spit on him and called him a "chomo." (*Id.*). Finally, plaintiff alleges that on August 23, 2016, defendant Mahlman placed him on a 90-day grievance restriction. (*Id.*).

Plaintiff seeks declaratory, injunctive, and monetary relief. (Doc. 1-1, Complaint at PageID 12).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with his claim that defendants Hale, Fri, Miller, Hutchinson, Dawson, Combs, and Noland retaliated against him for filing grievances against defendants and other SOCF employees. Plaintiff may also proceed with his claim that these defendants violated his Eighth and Fourteenth Amendment rights by targeting him because of his rape against a minor conviction and jeopardizing his safety by telling other inmates that he is a snitch and a child molester. Plaintiff's First Amendment claim that defendant Cool violated his free exercise rights by prohibiting him from attending religious services may also proceed. Finally, plaintiff's Eighth Amendment claim against defendants Oppy and Mahlman based on his allegation that these defendants ignored his request for protective custody despite knowledge of

8

threats from inmates and officers is worthy of further development and may also proceed at this juncture. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). However, plaintiff's remaining claims should be dismissed for failure to state a claim upon which relief may be granted.

First, plaintiff fails to state a First Amendment claim for denial of the right to petition the government for a redress of grievance against defendants Noland, Oppy, Mahlman, Erdos, Miller or the Chief Inspector for their failure to provide information pertaining to this action or otherwise address his grievances. *See Argue v. Hofmeyer*, 80 F. App'x 427, 43 (6th Cir. 2003) (finding allegations that the defendants repeatedly rejected grievances and placed the plaintiff on modified access status does not violate the right to petition the government for redress); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.").

Under the First Amendment, prisoners have a fundamental right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). "The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial." *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 350–51). "Actual injury" is not shown "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers,* No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. Dec. 21, 2000). "In other words, an inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'" *Winburn*, 43 F. App'x at 733 (quoting *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).

9

In this case, plaintiff fails to allege facts showing that he suffered any actual injury as a result of the defendants' actions. Plaintiff alleges that defendants neglected to provide him with the names of other defendants to this action, denied him access to the law library, and read or destroyed his legal papers. However, plaintiff has not alleged facts showing he has been unable to file court pleadings, missed court deadlines, or had a case dismissed in any nonfrivolous legal proceeding based on defendants' conduct. Absent such allegations, plaintiff's complaint fails to state a claim for relief for a denial of access to the courts under the First Amendment against defendants Noland, Oppy, Mahlman, Erdos, Miller or the Chief Inspector.

In the supplemental complaint, plaintiff also alleges that defendant Mahlman has placed him on a 90-day grievance restriction. (Doc. 7, at PageID 68). To the extent that plaintiff claims that his modified access to the grievance process resulted in a constitutional violation, he has also failed to state a claim upon which relief may be granted. "The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim." *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at *5 (W.D. Mich. May 6, 2015) (citing *Jackson v. Madery,* 158 F. App'x. 656, 660 (6th Cir. 2005); *Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio,* 20 F. App'x. 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis,* 24 F. App'x. 238, 241 (6th Cir. 2001)). The right to file institutional grievances without being subject to retaliation extends only to the filing of non-frivolous grievances and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status." *Walker,* 128 F. App'x. at 445–46. Accordingly, plaintiff has failed to state a claim upon which relief may be granted to the extent that he alleges a First Amendment violation in connection with being placed on restricted access to the grievance process.

10

To the extent that plaintiff seeks to hold defendants liable for their alleged failure to take corrective action in response to his grievances, plaintiff has also failed to state a claim upon which relief may be granted. Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

To the extent that plaintiff complains about defendants failure to provide him with forms, failure to respond, or other deficiencies in the grievance process, his allegations do not give rise to a plausible claim of federal constitutional dimension because he has no right under the Constitution to an effective prison grievance procedure. *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of complaint against prison official

11

responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker,* 128 F. App'x at 445 (and cases cited therein); *Argue,* 80 F. App'x at 430 (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000).

Furthermore, to the extent that plaintiff wishes to hold any of these defendants liable in their supervisory capacity, it is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tenn. Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Therefore, in the absence of any such allegation, plaintiff's claim that defendants Noland, Oppy, Mahlman, Erdos, Miller, or the Chief Inspector failed to take corrective action after they were notified of plaintiff's concerns is simply insufficient to give rise to an actionable § 1983 claim.

Plaintiff also alleges that defendant Dawson destroyed his television. To the extent that plaintiff alleges he was deprived of his property without due process of law by Dawson or any other named defendant, plaintiff's allegations are insufficient to state an actionable § 1983 claim.

12

In order to assert such a claim, plaintiff must first "plead . . . that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). *See also Hudson v. Palmer*, 468 U.S. 517 (1984). "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.,* 360 F.3d 583, 587–88 (6th Cir. 2004). Accordingly, in order to state a procedural due process claim under section 1983 "the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (quoting *Vicory*, 721 F.2d at 1066). A plaintiff "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations." *Jefferson*, 360 F.3d at 588.

Plaintiff has not alleged any facts even remotely indicating that his remedies under Ohio law to redress the alleged destruction of his personal property are inadequate. Therefore, he fails to state a due process claim that is actionable in this § 1983 proceeding.

Finally, plaintiff's claim against Officer Holbrook should also be dismissed because his allegations do not rise to the level of an Eighth Amendment violation. Plaintiff alleges that Holbrook called him a "chomo" and spit on him. (*See* Doc. 7, at PageID 68). However, it is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (in affirming dismissal of Eighth Amendment claim, the Sixth Circuit stated that "verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim"); *Montgomery v.*

13

*Harper,* No. 5:14CV-P38-R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) (and Sixth

Circuit cases cited therein) (dismissing an inmate's § 1983 claim alleging "verbal harassment"

and "abusive language" by a state correctional officer). *Cf. Matthews v. Norristown State Hosp.*,

528 F. App'x 115, 119 (3rd Cir. 2013) (and Sixth, Fifth and Tenth Circuit cases cited therein)

("mere threatening language does not amount to a constitutional violation"). Therefore, plaintiff

fails to state a claim upon which relief may be granted based on his allegation that Holbrook or

any other defendant called him a "chomo."

Furthermore, with regard to his allegation that Holbrook spit on him, "[a]s a matter of

law, a single incident of spitting does not constitute excessive force." *Tafari v. McCarthy*, 717 F.

Supp.2d 317, 348 (N.D.N.Y. May 24, 2010) (citing cases). *See also Shanklin v. Seals*, No. 3:07-

cv-319, 2010 WL 2942649, at *24 (E.D. Va. July 27, 2010) (finding that a single incident of

spitting, while certainly deplorable and offensive, does not rise to the level of a constitutional

violation); *Stapelton v. Wilson*, No. 07-cv-218-KSF, 2007 WL 3120121, at *5 (E.D. Ky. Oct. 23,

2007) (citing *De Mallory v. Cullen,* 855 F.2d 442, 445 (7th Cir. 1988) (correctional officer

spitting on prisoner does not rise to level of constitutional violation)). Plaintiff's claims against

Holbrook should therefore be dismissed.

Accordingly, in sum, plaintiff may proceed with his First Amendment retaliation, Eighth

Amendment, and Fourteenth Amendment claims against defendants Hale, Fri, Miller,

Hutchinson, Dawson, Combs, and Noland, as well as his First Amendment claim against

defendant Cool, and Eighth Amendment claim against defendants Oppy and Mahlman. For the

reasons stated above, the remaining claims should be dismissed for failure to state a claim upon

which relief may be granted by this Court.

14

## IT IS THEREFORE RECOMMENDED THAT:

Plaintiff's First Amendment, right to petition the government/access to the courts claims against defendants Noland, Oppy, Mahlman, Erdos, Miller, and the Chief Inspector; plaintiff's claim regarding the loss of his personal property against Dawson; and his Eighth Amendment claims against Holbrook be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## IT IS THEREFORE ORDERED THAT:

1. The United States Marshal shall serve a copy of the complaint, summons, the separate Order issued this date granting the plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendants Hale, Fri, Miller, Hutchinson, Dawson, Combs, Noland, Cool, Oppy, and Mahlman as directed by plaintiff, with costs of service to be advanced by the United States.

2. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Plaintiff shall inform the Court promptly of any changes in his address which may

occur during the pendency of this lawsuit.

Date: _11/1/16_

Karen L. Litkovitz
United States Magistrate Judge

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JONATHAN T. THOMAS,                                    Case No. 1:16-cv-793
     Plaintiff,

     vs.                                              Black, J.
                                                       Litkovitz, M.J.

RON ERDOS, et al.,
     Defendants.


**NOTICE**

     Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.    This period may be extended further by the Court on

timely motion for an extension.    Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.    If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.    A party may respond to another party's objections

WITHIN 14 DAYS after being served with a copy thereof.    Failure to make objections in

accordance with this procedure may forfeit rights on appeal.    *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).