# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JONATHAN T. THOMAS,
Plaintiff,

vs.

RON ERDOS, et al.,
Defendants.

Case No. 1:16-cv-793

Black, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this pro se action under 42 U.S.C. § 1983 for violations of his civil rights against defendants J. Cool, Christopher Combs, Richard Dawsen II, Garth Fri, Stephen Hale, Ryan Hutchinson, Linnea Mahlman, Merlin Miller, Jeremy Oppy, Brian Noland, Officer Irvin and Officer Scott.[1] Officers Irvin and Scott have not been served to date. (Doc. 72, n. 1). This matter is before the Court on plaintiff's motion for partial summary judgment against defendant Oppy (Doc. 58); a motion for summary judgment filed by defendants and by the Ohio Attorney General on behalf of proposed defendants Irvin and Scott (Doc. 72) and plaintiff's memorandum in opposition (Doc. 76); plaintiff's motion to appoint counsel (Doc. 82); and plaintiff's motion for default judgment against defendants (Doc. 83).

## I. Plaintiff's motion for appointment of counsel (Doc. 82)

Plaintiff has filed several motions for appointment of counsel in this case. He filed the most recent motion to appoint counsel on July 9, 2018. (Doc. 82). Plaintiff's motion is denied for the reasons stated in the Court's Order of April 17, 2018, denying an earlier filed motion. (*See* Doc. 75).

---

[1] Defendant Noland's name is correctly spelled "Nolan" and defendant Dawsen's name is correctly spelled "Dawson."

## II. Defendants' motion to dismiss under Fed. R. Civ. P. 4(m) (Doc. 72)

The Ohio Attorney General appears in this action under Ohio Rev. Code § 109.361 on behalf of proposed defendants Scott and Irvin, who have not been served in this lawsuit. (Doc. 72 at 1, n. 1). Summons were issued for Scott and Irvin on March 17, 2017. (Doc. 31). Summons were returned unexecuted on April 21, 2017. (Doc. 40). On June 18, 2018, the Court granted plaintiff a 20-day extension of time to serve the summons and complaint on defendants Irvin and Scott or show cause why service could not be effected within this time period. (Doc. 80). Service has not been executed and plaintiff has not made the required showing of good cause within the 20-day period. To the contrary, plaintiff has conceded that he is unable to serve these individuals because he does not know their first names. (*See* Doc. 83). Plaintiff's claims against Officers Scott and Irvin should therefore be dismissed for lack of service under Fed. R. Civ. P. 4(m).

## III. Plaintiff's motion for default judgment (Doc. 83)

Plaintiff moves for default judgment against defendants under Fed. R. Civ. P. 55. (Doc. 83). Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After the clerk enters the party's default, the plaintiff must move the court for a default judgment under subsection (b)(2). Fed. R. Civ. P. 55(b)(2). Defendants have not failed to plead or otherwise defend this case. Further, plaintiff has not obtained an entry of default by the Clerk. Plaintiff's motion should therefore be denied.

IV.  **The parties' motion for summary judgment (Docs. 58, 72)**

A.  **Summary judgment standard**

A motion for summary judgment should be granted if the evidence submitted to the Court

demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The Court must

evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-

moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986);

*Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the

matter, but it is to determine whether there is a genuine factual issue for trial.  *Anderson*, 477

U.S. at 249; *Little Caesar Enterprises, Inc.*, 219 F.3d at 551.  The trial court need not search the

entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80

(6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law."  *Anderson*, 477 U.S. at 251-52.  "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

*Matsushita*, 475 U.S. at 587.  "When opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

*Scott v. Harris*, 550 U.S. 372, 380 (2007).  However, "[f]acts that are not blatantly contradicted

by [the evidence] remain entitled to an interpretation most favorable to the non-moving party."
*Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

**B. Plaintiff's motion for partial summary judgment against defendant Oppy (Doc. 58)**

Plaintiff moves for summary judgment against defendant Oppy, the manager of his unit, on claims for violation of his Eighth Amendment rights. (Doc. 58). Oppy did not file a separate memorandum in opposition to plaintiff's motion but has moved for summary judgment on plaintiff's claims. (Doc. 72).

In support of his motion for summary judgment against defendant Oppy, plaintiff alleges that Oppy was deliberately indifferent to plaintiff's complaints of retaliation and is liable for failure to protect under the Eighth Amendment. Plaintiff alleges that he informed Oppy that he was "under attack" as a result of corrections officers telling inmates plaintiff was a "snitch." Plaintiff claims he requested protective custody from Oppy because plaintiff "was being

4

extorted." Plaintiff claims he told Oppy he was concerned with "the way Sgt. Payne had been acting towards" plaintiff. Plaintiff alleges that Oppy accused him of being a liar and threatened to put plaintiff in isolation if he did not tell Oppy the names of the inmates involved. Plaintiff alleges that he also told Oppy he had concerns about Sergeant Chris Payne making sexual advances toward him, and Oppy again called him a liar. Plaintiff alleges that shortly thereafter, Payne sexually assaulted plaintiff. Plaintiff alleges that Oppy did not follow policy by reporting plaintiff's concern to "PREA," the prison sexual assault hotline. Plaintiff claims that as a result of Oppy's refusal to report the alleged sexual assault, plaintiff was sent to isolation for three days, he was unable to contact PREA, all evidence of the alleged assault was lost, and plaintiff's allegations could not be substantiated.

Plaintiff claims it is undisputed that defendant Oppy did not follow Ohio Department of Rehabilitation and Correction (ODRC) policy, which requires prison staff to immediately report sexual misconduct, staff neglect, and retaliation for reports of such incidents. Plaintiff alleges that Oppy's failure to follow rules and policies concerning the protection of prisoners supports a claim of deliberate indifference. Plaintiff further alleges that Oppy refused to provide plaintiff with protective custody, even though plaintiff informed Oppy that Payne was retaliating against him by placing him on multiple restrictions and Oppy knew that plaintiff was a "target" because of his status as a sex offender. Plaintiff alleges that as a result of Oppy's refusal and plaintiff's filing of a PREA report, plaintiff was targeted by Payne.

Plaintiff asks that two prior motions for summary judgment that he filed, but which were dismissed as premature, be reinstated with his present motion. (Docs. 38, 51). In the first motion filed on April 13, 2017, plaintiff alleges that Oppy was the manager of the unit where

plaintiff was the victim of sexual misconduct by a staff member on April 2, 2016. (Doc. 38).

Plaintiff states that he was subjected to retaliation in the form of cell searches and false conduct

report due to filing a PREA claim. Plaintiff alleges he informed Oppy of the retaliation but Oppy

called him a liar and sent him away. Plaintiff alleges he filed several informal complaints with

Oppy regarding retaliation, which Oppy never responded to, and requested that Oppy place him

in protective custody due to constant threats from inmates due to the nature of his criminal

conviction, which Oppy ignored. Plaintiff alleges that due to Oppy's neglect, he was again

assaulted by a staff member on February 24, 2017. Plaintiff alleges that by failing to protect him

and by not contacting PREA on plaintiff's behalf, Oppy violated ODRC Policy 79-ISA-02,

which requires staff to provide a safe and secure environment, "free from the threat of sexual

misconduct for all inmates by maintaining clear procedures for reporting, detecting, responding

and investigating misconduct." He alleges that Institutional Inspector Mahlman conducted an

investigation and found Oppy violated institutional policies, and she submitted a report to the

managing officer for his review on March 29, 2017. (*Id.*, Exh. A). Plaintiff filed his second

motion on July 13, 2017, with three exhibits. (Doc. 51, Exhs. A, B, C). The exhibits show that

(1) plaintiff filed a grievance alleging that Oppy violated policy by failing to contact PREA and

calling plaintiff a liar when plaintiff wrote an Informal Complaint Resolution (ICR) to Oppy

about a sexual assault that allegedly occurred in Payne's office on February 28, 2017, (2) a

determination was made that Oppy violated ODRC Policy 79-ISA-02; and (3) plaintiff's

grievance was granted on March 29, 2017. (*Id.*, Exh. A).

In his motion for summary judgment, defendant Oppy contends that plaintiff failed to

exhaust his administrative remedies on his claims against Oppy as required under the Prison

Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (Doc. 72 at 11). Oppy acknowledges that plaintiff filed a grievance concerning his complaints against Oppy on June 27, 2016. (*See* Doc. 72-4, Mahlman Declaration, ¶ 21, p. 12; SOCF 6-16-000311). Plaintiff alleged in the grievance that Oppy (1) failed to provide information to plaintiff that was "crucial to [his] lawsuit," (2) was deliberately indifferent to plaintiff's complaints of staff retaliation and inmate threats, and (3) accused plaintiff of lying. (*Id*). Defendant concedes that plaintiff exhausted his administrative remedies as to his claims that Oppy was deliberately indifferent to his complaints of staff retaliation and threats from inmates. However, defendant alleges that plaintiff did not complete the grievance process prior to the date he filed this lawsuit, and his claims against Oppy must therefore be dismissed for failure to properly exhaust his administrative remedies.

For the reasons discussed *infra* in connection with the motion for summary judgment filed on behalf of all defendants who have been served in this lawsuit, the Court finds that plaintiff failed to properly exhaust his administrative remedies for his claims against defendant Oppy before filing this lawsuit. Therefore, plaintiff is not entitled to summary judgment on his claims against defendant Oppy. The claims should be dismissed without prejudice for failure to exhaust administrative remedies.

Even if plaintiff had timely exhausted the claims he grieved, these claims against defendant Oppy fail on the merits. The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement and to take reasonable measures to guarantee the safety of inmates. *Greene v. Bowles*, 361 F.3d 290, 296 (6th Cir. 2004). A claim for violation of the duty to protect under the Eighth Amendment has objective and subjective components. *Famer v. Brennan*, 511 U.S. 825, 835-38 (1994). To

satisfy the objective component, the plaintiff must show that absent reasonable precautions, he was exposed to a substantial threat of serious harm. *Id*. at 837. To satisfy the subjective component, the prisoner must show that (1) "the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner," (2) the official "did in fact draw the inference," and (3) the official "then disregarded that risk." *Richko v. Wayne County, Mich*., 819 F.3d 907, 915-16 (6th Cir. 2016) (citing *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). *See also Enyart v. Ohio Dept. of Rehab. and Correction*, No. 2:16-CV-161, 2017 WL 499085, at *2 (S.D. Ohio Feb. 7, 2017) ("the officials must be aware of a specific threat to either the plaintiff or to a class of persons to which the plaintiff belongs, and that threat must be substantiated by objective evidence, not the inmate's subjective fear") (citation omitted)). Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. *Farmer*, 511 U.S. at 837; *Enyart*, 2017 WL 499085, at *2.

Plaintiff alleges in the complaint that Oppy violated his rights under the Eighth Amendment by failing to protect plaintiff from harassment by institutional staff after plaintiff filed a PREA case and telling plaintiff he was a liar when he complained about retaliation in the form of cell searches; failing to provide a theft/loss form for legal work defendant Fri allegedly took; refusing to give plaintiff the first names of the officers he is suing; and ignoring plaintiff's request for protective custody. (Doc. 9 at 12). Plaintiff has not introduced evidence to show that any of these alleged acts or omissions rose to the level of a violation of his constitutional rights. A prison official has a duty "to protect prisoners from violence at the hands of other prisoners." *See Amick v. Ohio Dept. of Rehab. & Correction*, 521 F. App'x 354, 363 (6th Cir. 2013); *Enyart*,

2017 WL 499085, at *2 (citing *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998)). However, plaintiff has not introduced any evidence to show that another inmate posed a specific, objective threat to plaintiff, and that Oppy was aware of that threat. The fact that prison officials considered plaintiff to be a "snitch," or generally vulnerable to harm because of the nature of his crime, is not sufficient in and of itself to give rise to a duty to protect under the Eighth Amendment. *Kennedy v. Wilson*, No. 10-CV-299-HRW, 2013 WL 5234435, at *9 (E.D. Ky. Sept. 17, 2013). There must be evidence that Oppy was actually aware of facts from which an inference could be drawn that a substantial risk of harm to plaintiff existed, and that Oppy actually drew that inference. *Id.* (citing *Ford v. Alexander*, No. 5:11CV575, 2013 WL 978209, at *12 (N.D. Ohio Feb. 22, 2013)). Plaintiff has not presented evidence to satisfy these elements of a failure to protect claim against Oppy. Thus, Oppy did not violate his Eighth Amendment rights by allegedly failing to respond to his request to be placed in protective custody in order to protect plaintiff from harm by other inmates.

Further, plaintiff has not produced evidence to show that Oppy can be held liable for failing to protect plaintiff from an alleged sexual assault by fellow officer Payne. Under some circumstances, a corrections officer may be held liable for failing to intervene in the unlawful use of force against an inmate by another officer. *White v. Bell*, 656 F. App'x 745, 749 (6th Cir. 2016) (citing *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990)). Plaintiff has not produced any evidence, however, that Oppy knew that Payne posed a threat to plaintiff prior to the alleged assault and that Oppy ignored that specific threat. Further, plaintiff has not submitted any evidence that Oppy's alleged failure to protect him and to report plaintiff's complaints caused any injury to plaintiff that is actionable under the PLRA, which bars prisoner suits "for

mental or emotional injury suffered while in custody without a prior showing of physical injury"

or the commission of a statutorily defined sexual act. *See Braswell v. Corrections Corp. of Am.*,

419 F. App'x 622, 626 (6th Cir. 2011) (citing 42 U.S.C. § 1997e(e) ("The PLRA bars prisoner

suits 'for mental or emotional injury suffered while in custody without a prior showing of

physical injury or the commission of a sexual act as defined in section 2246 of Title 18.'")).

Plaintiff has not introduced evidence to show that Payne committed a sexual act as defined under

18 U.S.C. § 2246 or that he suffered any physical injury as a result of the alleged assault. The

disposition of grievance issued on March 29, 2017 addresses plaintiff's complaint that Oppy

accused him of lying about the alleged Payne assault and told plaintiff to call PREA himself.

(Doc. 51, plaintiff's motion for partial summary judgment, Exh. A). The disposition describes

the assault and reflects that plaintiff, by his own admission, was not injured as a result of the

alleged assault. The disposition states that according to the medical record, plaintiff reported to

medical personnel on March 2, 2017, two days after the February 28, 2017 incident, that he "was

not injured" during the alleged assault; that "[o]nly [his] head was touched during the incident";

"the staff member went to grab [plaintiff's] head and [plaintiff] pulled away"; and plaintiff "had

no injuries and [plaintiff] stated no other physical or sexual contact occurred and [he] had no

other complaints at that time." (*Id.*). The assault as described by plaintiff does not fit the

definition of a "sexual act" under the PLRA, and plaintiff does not dispute that he suffered no

injury as a result. Because there is no evidence that plaintiff suffered a physical injury or a

sexual assault as the result of Oppy's actions or failure to act, plaintiff cannot pursue a claim

against Oppy under the Eighth Amendment.

Finally, insofar as plaintiff alleges that Oppy violated his rights by failing to comply with

ODRC Policy 79-ISA-02 and report Payne's alleged assault, plaintiff is not entitled to summary judgment on this claim. A prison official cannot be held liable for an Eighth Amendment violation for failing to report an inmate's complaint. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Thus, the evidence is not sufficient to support plaintiff's claim that Oppy violated his Eighth Amendment rights. Plaintiff has failed to submit evidence to show that a specific threat existed, that Oppy knew of the specific threat to plaintiff, and that plaintiff suffered a physical injury as a result of Oppy's omission. Nor can Oppy be held liable under the Eighth Amendment for failing to report plaintiff's claim of an alleged sexual assault. Plaintiff's motion for summary judgment on his claim against Oppy should be denied.

### C. Defendants' motion for summary judgment (Doc. 72)

Defendants move for summary judgment on plaintiff's claims that they subjected him to a series of harassing acts and retaliatory measures from April 2, 2016 through the end of 2016 because of his status as a sex offender. (Doc. 72). Defendants move for summary judgment on four grounds: (1) plaintiff did not timely exhaust his claims as required under the PLRA, 42 U.S.C. § 1997e(a); (2) plaintiff does not allege a physical injury as required to recover under the PLRA; (3) defendants are entitled to qualified immunity because plaintiff has not alleged a violation of his constitutional rights, and (4) plaintiff's official capacity claims are barred by the Eleventh Amendment. Defendants present evidence in the form of declarations and administrative records in response to plaintiff's allegations in the complaint. Plaintiff has not submitted an affidavit or other evidence in opposition to defendants' summary judgment motion.

1. **Plaintiff failed to exhaust his administrative remedies**

a. **Exhaustion requirements**

Defendants contend they are entitled to summary judgment as a matter of law because plaintiff did not exhaust the inmate grievance procedure for his claims before he filed this lawsuit. (Doc. 72). Exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* Summary judgment is appropriate for failure to exhaust administrative remedies only if the defendant establishes "the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)). To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). A prisoner must adhere to the time limitations and other requirements of the institutional grievance policy. *Risher*, 639 F.3d at 240 (citing *Woodford,* 548 U.S. at 90-91). A prisoner has exhausted his administrative remedies "when prison officials fail to timely respond to a properly filed grievance." *Id.* (citing *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member or the department most directly responsible for the subject matter of the grievance within 14 days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1); Doc. 72-4, Mahlman Declaration, ¶ 11. Staff shall respond to the informal complaint within seven calendar days of its receipt. *Id.* The inmate "should immediately contact the inspector of institutional services either in writing or during regular open office hours" if he does not receive a written response from the staff member

"within a reasonable time." *Id.*; Doc. 72-4, Mahlman Decl., ¶ 12. "The inspector of institutional services shall take prompt action to ensure that a written response is provided to the informal complaint within four calendar days." *Id.* If the inmate is not provided a response by the end of the fourth day, "the informal complaint step is automatically waived." *Id.* The filing of an informal complaint may be waived under other circumstances, including if the inspector of institutional services determines "there is a substantial risk of physical injury to the grievant." Ohio Admin. Code § 5120-9-31(K)(1).

Second, if the inmate is unsatisfied with the response to his informal complaint he must file a formal notification of grievance (NOG) with the inspector of institutional services at his institution of confinement no later than 14 calendar days from the date of the informal complaint response or waiver of the informal complaint step. Ohio Admin. Code § 5120-9-31(K)(2); Doc. 72-4, Mahlman Decl., ¶ 13. The inspector of institutional services is required to provide a written response to the inmate's grievance within 14 calendar days of receipt of the grievance, although the time may be extended for good cause with notice to the inmate, and expedited responses shall be made if the inspector of institutional services determines the grievance presents a substantial risk of physical injury. Ohio Admin. Code § 5120-9-31(K)(2).

Third, if the inmate is dissatisfied with the response, he may undertake the third step of the grievance process by filing an appeal to the office of chief inspector of the ODRC within 14 days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3); Doc. 72-4, Mahlman Declaration, ¶ 14. The chief inspector, whose decision is final, shall provide a written response within 30 days of receipt of the appeal. Ohio Admin. Code § 5120-9-31(K)(3).

14

An inmate must file a grievance against the warden or inspector of institutional services directly to the office of chief inspector within 30 calendar days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(M); Doc. 72-4, Mahlman Declaration, ¶ 15. The chief inspector shall respond in writing within 30 days of receipt of the grievance. Ohio Admin. Code § 5120-9-31(M).

Informal complaints and grievances must contain specific information about the incident giving rise to the complaint, including dates, times, locations, and the names of personnel involved and of any witnesses, if applicable. Ohio Admin. Code 5120-9-31(K); Doc. 72-4, Mahlman Declaration, ¶ 11. The inmate may file a "John/Jane Doe" complaint if he does not know the identity of the personnel involved, but the complaint must include specific information about the incident as well as "physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint." *Id*. Specific information is required "to give institutional staff the opportunity to investigate the complaint and to take corrective action to address a valid complaint." *Id*.

When a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate. *Hopkins v. Ohio Dept. of Corrections*, 84 Fed. Appx. 526, 527 (6th Cir. 2003) (citing 42 U.S.C. § 1997e(a); *White v. McGinnis,* 131 F.3d 593, 595 (6th Cir. 1997)). Exhaustion may not be completed after a federal complaint has been filed. *Id*. (citing *Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir. 1999)).

### b. Plaintiff's administrative filings

Defendants argue that before filing this action, plaintiff failed to exhaust his

administrative remedies under the PLRA for his claims against defendants Miller, Combs, Dawson, Nolan, Cool and Mahlman. (Doc. 72-4, Mahlman Decl., ¶ 22(A)). Defendants argue that plaintiff's claims against these defendants must therefore be dismissed. (Doc. 72 at 13, citing *Hopkins*, 84 F. App'x at 527). Defendants allege that plaintiff did not exhaust his grievances against defendants Hutchinson, Fri, Hale and Oppy until after he submitted his complaint on July 28, 2016, and that plaintiff's claims against these defendants must likewise be dismissed.

The evidence submitted by the parties shows that plaintiff did not properly exhaust his administrative remedies for all but two of the claims that he has presented in this lawsuit. Between December 7, 2015 and January 1, 2017, plaintiff submitted a total of 38 grievances. (Doc. 72-4, Mahlman Declaration, ¶ 20). In 31 of those grievances, plaintiff did not mention any of the defendants named in this case or give a description of an individual who was later identified to be one of the defendants in this lawsuit. (*Id.*). Thus, only seven of plaintiff's grievances involve defendants to this lawsuit, or parties named as defendants who have not been served.[2]

Two of these seven grievances involved defendant Mahlman: (1) SOCF 6-16-000335, an ICR plaintiff filed on June 26, 2016 and which was denied on June 28, 2016, complaining about an investigation Mahlman had completed on a NOG plaintiff had filed; and (2) SOCF 7-16-

---

[2] Plaintiff also mentioned defendant "Noland" in the ICR he submitted to Nolan on December 17, 2015, alleging that "Sgt. Payne" refused to give plaintiff a theft/loss report; however, plaintiff did not complain about any conduct by Nolan in that grievance. (Doc. 72-6). Plaintiff submitted an ICR on May 4, 2016, alleging that he asked a corrections officer who was reading his legal work to stop, and "Inmate Frye" called him a "chomo" and threatened to read all of his legal work. (Doc. 72-5). It appears from the context of the allegations that plaintiff may have intended to refer to "Officer Frye" here, but plaintiff did not take the opportunity to clarify what officer he was referring to by filing a NOG or Appeal.

000052, an ICR plaintiff filed on July 3, 2016 and which was denied on July 6, 2016,

complaining about Mahlman's decision on one of his prior NOG's in which she informed him

that video evidence was not available. The Court dismissed plaintiff's claims that Mahlman

failed to take corrective action after being notified of plaintiff's concerns on initial screening.

(Docs. 11, 13). Therefore, whether plaintiff exhausted his administrative remedies on these

claims is no longer relevant.

Of the remaining five grievances plaintiff filed during the relevant time period pertaining

to the surviving claims and defendants in this lawsuit, plaintiff exhausted the three-step

grievance procedure for two claims prior to filing this lawsuit on July 28, 2016: (1) SOCF 4-16-

000025, filed on April 2, 2016, against "C/O Hutchenson"; and (2) SOCF 5-16-000054, filed on

May 4, 2016, against Hale, Miller and Fri. (Doc. 72-4, Mahlman Declaration, ¶ 21, pp. 10-11).

The claims addressed in these grievances are resolved on the merits below.

That leaves three grievances in which plaintiff named or described defendants in this

lawsuit: SOCF 12-16-000125, SOCF 6-16-000311, SOCF 7-16-000067. In SOCF 12-16-

000125, submitted on December 10, 2016, plaintiff alleged that Officer Irvin told plaintiff to put

his hands on the wall and "shut up chomo" and that Officer Scott (who plaintiff incorrectly

identified as "Officer Rogers" in the ICR) told plaintiff he was going to be strip searched because

he was a "chomo" and a "snitch" and threatened to mace plaintiff if he did not shut up. (Doc.

72-4, Mahlman Declaration, ¶ 21, p. 14). The Court need not address whether plaintiff has

exhausted this grievance in light of the recommendation, *supra*, that the complaint against Irvin

and Scott be dismissed under Rule 4(m) for lack of service.

The last two grievances are: (1) SOCF 6-16-000311, submitted on June 27, 2016, alleging that defendant Oppy failed to provide information to plaintiff that was "crucial to [his] lawsuit," he was deliberately indifferent to plaintiff's complaints of staff retaliation and inmate threats, and he accused plaintiff of lying (Doc. 72-4, Mahlman Declaration, ¶ 21, p. 12); and (2) SOCF 7-16-000067, submitted on July 6, 2016, alleging that Fri and Hale came to conduct "shake downs," Hale called plaintiff a "chomo snitch" and made people on the range laugh, and Fri "grabbed his dick and said 'suck this chomo.'" (Doc. 72-4, Mahlman Decl., ¶ 21, p. 13).

Plaintiff failed to properly exhaust the prison grievance procedure on his claim against defendant Oppy in SOCF 6-16-000311 and defendants Fri and Hale in SOCF 7-16-000067 before he filed his lawsuit. While plaintiff completed the three steps of the grievance process for these grievances, he filed his lawsuit prior to fully exhausting the prison grievance procedure. (Doc. 72-4, Mahlman Decl., ¶ 21, pp. 12- 13). The PLRA "makes exhaustion a precondition to filing an action in federal court," and a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). As plaintiff did not complete the grievance process in SOCF 6-16-000311 and SOCF 7-16-000067 before he filed this lawsuit on July 28, 2016, his claims are subject to dismissal for failure to exhaust.

Plaintiff argues in response that he did not fail to timely exhaust his claims pursuant to the PLRA. (Doc. 76 at 8). Plaintiff makes the internally inconsistent argument that he timely filed all of his complaints, and those that were not timely should be waived due to the "extreme threat of physical harm." (*Id*. at 8). However, plaintiff has not introduced any evidence to show that he faced an extreme threat of physical harm as is his burden on summary judgment. Plaintiff

18

also argues that the Chief Inspector failed to respond to his appeals on multiple occasions, which excuses his failure to complete the steps of the grievance process. Plaintiff asserts there is no provision in the Ohio Administrative Code to resubmit an appeal, and a prisoner can assume after 30 days that the appeal was denied. (*Id.*). Plaintiff alleges that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance. (*Id.*, citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004)). Plaintiff states that he complained about the lack of response to his grievances. (*Id.*, citing Exhs. 8, 40).[3] Plaintiff cites to an appeal he filed with the Chief Inspector on August 19, 2016, complaining that he sent the Chief Inspector's Office appeals on five dates for which he did not receive an answer: April 2, 2016, May 4, 2016, June 19, 2016, July 21, 2016 and one additional date that plaintiff could not specify. (*Id.*, Exh. 8). Plaintiff stated that the appeals were from dispositions of the following grievances: "SOCF-05-16-000162/SOCF-07-16-000168/SOCF-08-16-000045/SOCF-06-16-000168/SOCF-08-16-000040 and SOCF-07-16-000280." (*Id.*).

As best the Court is able to discern, the five appeals for which plaintiff claims he did not receive a response include the grievances against defendant Hutchinson (SOCF 4-16-000025) and defendants Hale, Miller and Fri (SOCF 5-16-000054), which were in fact exhausted and are addressed on the merits below. The next was a grievance against "Mr. Parker" (SOCF 6-16-000345), who is not a defendant in this lawsuit. The fourth was a grievance against defendants

---

[3] Exhibit 40 appears to be an excerpt from a published report of the results of a survey of prison staff and inmates entitled, "CIIC: Safety and Security." The report includes no information about plaintiff and is not material to the question of whether plaintiff properly exhausted his administrative remedies in this case.

and Hale (SOCF 7-16-000067), which, as discussed above, was exhausted but not until after plaintiff had already filed this lawsuit.

The only grievance that arguably involved a delayed response was plaintiff's grievance against defendant Oppy (SOCF 6-16-000311). Plaintiff appealed the disposition of his grievance against defendant Oppy on July 20, 2016. However, plaintiff waited only eight days after he submitted his appeal before filing this lawsuit, which was well before the 30-day period had elapsed for the Chief Inspector to investigate and provide a written response to the appeal. *See* Ohio Admin. Code. 5120.31(K)(3). Plaintiff was notified on August 30, 2016 that there would be an additional investigation, he and witnesses were interviewed on September 12, 2016, and a supplemental disposition of grievance was issued on that date. Plaintiff did not submit an appeal of the supplemental disposition. (Doc. 72-4, Mahlman Declaration, ¶ 21, p. 12). The fact that there was a delay in the response to plaintiff's initial appeal does not excuse plaintiff's failure to exhaust his administrative remedies before filing suit. Plaintiff has not pointed to any other delays or circumstances surrounding his administrative appeals which show that his failure to exhaust his administrative remedies should be excused.

Both the Sixth Circuit and this District Court have found that "if a claim is dismissed on the procedural ground of failing to exhaust under the PLRA, the dismissal is without prejudice." *Payne v. Gifford*, No. 1:16-cv-514, 2017 WL 4329631, at *6 (S.D. Ohio Sept. 5, 2017) (Report and Recommendation) (Bowman, M.J.) (citing *Boyd*, 380 F.3d at 994) ("A dismissal under § 1997e should be without prejudice.")), *adopted*, 2017 WL 4310543 (S.D. Ohio Sept. 28, 2017) (Barrett, J.). Defendants have not shown why the Court should decline to follow *Payne* and the

guidance provided in *Boyd*, under which dismissal of plaintiff's unexhausted claims should be without prejudice. Plaintiff's unexhausted claims should be dismissed without prejudice.

## 2. Defendants are entitled to summary judgment on the exhausted claims

Plaintiff exhausted all three steps of the administrative grievance on claims that corrections officers Hutchinson, Fri, and Hale harassed plaintiff based on the nature of his conviction by calling him derogatory names and using crude gestures, mistreating his personal property, and subjecting him to a strip search. Plaintiff alleges that in April 2016, defendant Hutchinson told plaintiff to "suck my dick," called plaintiff a "baby rapper [sic]," and told plaintiff that "[someone] should rap [sic] you." *See* SOCF 4-16-000025; Doc. 72-4, Mahlman Declaration, ¶ 20, p. 10. Plaintiff alleges that in May 2016, Hale and Fri called him a "chomo," encouraged him to "come off the wall," threw his personal property, and searched his cell.[4] *See* SOCF 5-16-000054, Doc. 72-4, Mahlman Declaration, ¶ 21, p. 11.

Plaintiff has not produced evidence to show that defendants acted with deliberate indifference to his safety as is his burden for his exhausted claims against Hutchinson, Hale and Fri. *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (internal quotation marks omitted) (official must act with deliberate indifference to inmate health and safety to satisfy Eighth Amendment inhumane conditions of confinement claim). First, the verbal harassment plaintiff alleges does not constitute cruel and unusual punishment that rises to the level of an Eighth Amendment violation. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004)

---

[4] Plaintiff also alleges in the NOG and the appeal that Miller read his legal paperwork. Defendant asserts that plaintiff failed to make the allegations against Fri, Miller and Hale at each step of the process and did not identify or describe the individuals involved at each step of the process. Construing the evidence in plaintiff's favor, it appears that Hale and Fri are the unidentified individuals in the ICR who allegedly called plaintiff a "chomo" and encouraged him to come off the wall. The Court therefore finds for summary judgment purposes that plaintiff exhausted all three steps of the grievance procedure before he filed this lawsuit on at least some of his allegations against Hale and Fri.

("harassment and verbal abuse [such as continuously banging and kicking cell door, throwing food trays so hard the food flies off, making insulting remarks, and jerking the inmate unnecessarily hard when escorting him from his cell] do not constitute the type of infliction of pain that the Eighth Amendment prohibits") (citing *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.")). *See also Carney v. Johnson*, No. 1:09-CV-598, 2010 WL 3810153, at *2 (W.D. Mich. Sept. 23, 2010), *aff'd*, (6th Cir. Nov. 13, 2012) (allegations that corrections officer subjected prisoner to verbal harassment and a single search of his cell insufficient to state Eighth Amendment claim). Moreover, each of the named defendants deny that they ever called plaintiff a "chomo" or a "snitch," and they also assert that they have never witnessed an employee of the Ohio Department of Rehabilitation and Correction (ODRC) refer to plaintiff in these terms. (Doc. 72 at 5; Doc. 72-1, Cool Declaration, ¶ 4; Doc. 72-2, Dawson Declaration, ¶ 4; Doc. 72-3, Hale Declaration, ¶ 4; Doc. 72-4, Mahlman Declaration, ¶ 4; Doc. 72-7, Miller Declaration, ¶ 4; Doc. 72-8, Fri Declaration; Doc. 72-9, Nolan Declaration, ¶ 4; Doc. 72-10, Oppy Declaration, ¶ 4; Doc. 72-11, Combs Declaration, ¶ 4; Doc. 72-12, Hutchinson Declaration, ¶ 4). Plaintiff has not introduced any evidence to dispute these assertions. Standing alone, plaintiff's allegations that these defendants threw his legal papers, searched his cell, and strip searched him on one occasion do not rise to the level of a constitutional violation. Defendants Hutchinson, Fri and Hale are entitled to summary judgment on the merits of plaintiff's claims which were fully exhausted prior to the date plaintiff filed this lawsuit.

**IT IS THEREFORE ORDERED THAT:**

1.   Plaintiff's motion for appointment of counsel (Doc. 82) is **DENIED**.

**IT IS THEREFORE RECOMMENDED THAT:**

1.   Defendant Irvin and Scott's motion to dismiss under Fed. R. Civ. P. 4(m) (Doc. 72) be **GRANTED** and the claims of these defendants be **DISMISSED** under Fed. R. Civ. P. 4(m) for lack of service.

2.   Plaintiff's motion for default judgment (Doc. 83) be **DENIED**.

3.   Plaintiff's motion for partial summary judgment against defendant Oppy (Doc. 58) be **DENIED.**

4.   Defendants' motion for summary judgment be (Doc. 72) **GRANTED** and that plaintiff's claims against Hale, Fri and Hutchinson related to the alleged April 2016 incidents be **DISMISSED** with prejudice and the remaining claims against these defendants and against defendants Cool, Miller, Dawson, Mahlman and Oppy be **DISMISSED** without prejudice for failure to exhaust administrative remedies.


Date:  _8/3/18_                          _Karen L. Litkovitz_
                                         Karen L. Litkovitz
                                         United States Magistrate Judge

# . UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JONATHAN T. THOMAS,
    Plaintiff,

    vs.

RON ERDOS, et al.,
    Defendants.

Case No. 1:16-cv-793

Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).